**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4095**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE MANUEL-CALIXT MENDEZ,

Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (7:09-cr-00052-BO)

Argued: May 15, 2012          Decided: July 5, 2012

Before WILKINSON and AGEE, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by unpublished opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Hudson concurred.

**ARGUED:** Jennifer Haynes Rose, LAW OFFICE OF JENNIFER HAYNES ROSE, Raleigh, North Carolina, for Appellant. Jennifer E. Wells, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

Jose Manuel-Calixt Mendez challenges the procedural and substantive reasonableness of his sentence, but not his underlying convictions. Because the district court plainly erred in failing to consider the factors listed in 18 U.S.C. § 3553(a) or to state on the record a basis for the sentence it imposed, we vacate Mendez' sentence and remand this case for resentencing.

I.

Mendez pleaded guilty, without the benefit of a written agreement, to several drug-related charges arising from his participation in a multi-party, multi-year (2001-2009), multi-state conspiracy to distribute cocaine powder and cocaine base ("crack"). Based on those transactions, a pre-sentence report ("PSR") provided Mendez should be accountable for 551.6 grams of cocaine base, 52 kilograms of cocaine, and 5,000 pounds of marijuana, which totaled a marijuana equivalency of 23,700 kilograms under the 2009 United States Sentencing Guidelines Manual (U.S.S.G.). The PSR also described Mendez as a manager of criminal activity involving five or more participants because he oversaw co-conspirators who would broker deals and convert cocaine to cocaine base under Mendez' direction. After a three-level increase due to his managerial or supervisory role

(U.S.S.G. § 3B1.1(b)), and a three-level downward adjustment based on acceptance of responsibility (id. § 3E1.1(b)), the PSR stated a total offense level of 36, which, when combined with his criminal history category of I, resulted in a recommended Sentencing Guidelines range of 188 to 235 months' imprisonment.

After considering Mendez' objections to the drug weight calculation and the managerial/supervisory role enhancement, the district court "le[ft] the report as written," which made Mendez' advisory Guidelines range 188 to 235 months' imprisonment as to each of the grouped offenses. After hearing respective arguments from counsel, the district court stated its entire sentencing decision as follows:

> All right. I'll impose a sentence of 210 months on counts one, four, five, two, three and six concurrent in the custody of the United States Bureau of Prisons. A term of supervised release of five years on those six counts, concurrent. Restitution is not appropriate. Six hundred dollars in special assessment. He's given credit for time served. That's all.

J.A. 73. Mendez noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

Mendez challenges the procedural and substantive reasonableness of his sentence, both of which we review under a deferential abuse of discretion standard. United States v. Bell,

667 F.3d 431, 440 (4th Cir. 2011). "We review factual findings for clear error, and legal conclusions de novo." United States v. Davis, 679 F.3d 177, 2012 WL 1608607, *4 (4th Cir. May 9, 2012) (slip copy).


III.

We first consider Mendez' allegations of procedural error. Then we consider the question whether the district court committed reversible plain error in failing to evaluate the § 3553(a) factors at all during sentencing proceedings. Because we answer that question in the affirmative, we decline to reach Mendez' substantive reasonableness claim.


A.

Mendez argues that the district court erred in adopting the PSR calculation of drug weight over Mendez' challenge. Reviewing the district court's factual findings as to the application of the Guidelines—including the determination of the relevant quantity of drugs—for clear error, United States v. Fletcher, 74 F.3d 49, 55 (4th Cir. 1996), we are not "left with the definite and firm conviction that a mistake has been committed." United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005).

For sentencing purposes, the Government must establish the amount of drugs involved by a preponderance of the evidence. United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999). "[W]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994); see also § 2D1.1, cmt. n.12 (stating that a district court is not required to precisely calculate attributable drug weights, but may instead approximate drug quantity).

Put simply, that is precisely what the district court did in setting the drug weight based on the PSR calculations. Mendez bore the burden of establishing that the PSR's calculation was incorrect, but offered nothing—other than broadly crafted objections—to the reliability of the testimony presented at trial. Mendez did not cite any specific evidence that might suggest the witnesses lacked credibility or were providing duplicative evidence as to drug weight.[1] Given Mendez'

_____

[1] In addition, Mendez' objection to the drug amount set forth in paragraph 23 did not assert the information was unreliable for any specific reason, only that it was hearsay from a co-defendant. However, not only can "hearsay alone . . . provide sufficiently reliable evidence of quantity[,]" United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992), but a "trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain." United States v. Terry, 916 F.2d 157, 161 (4th Cir. (Continued)

oblique, nonspecific objections to the higher drug weight, we

are not left with the definite and firm conviction that the

district court erred in adopting the PSR's drug weight

calculation.[2]

---

1990) (citation omitted). <u>See also</u> <u>United States v. Burns</u>, 990
F.2d 1426, 1439 (4th Cir. 1993) ("The settled law of this
circuit recognizes that the testimony of a defendant's
accomplices, standing alone and uncorroborated, can provide an
adequate basis for conviction."). The district court thus
properly exercised its discretion in finding Mendez' objection
insufficient to upset that transaction in the drug weight
calculation.

   [2] We briefly address two other points raised by Mendez.
First, without citing to any authority, Mendez claims that the
Government should have been required to call the lead
investigator as a witness rather than proffer to the district
court what his testimony would be. As we observed in <u>United
States v. Bell</u>, the Guidelines do not require that drug weight
be proven by a particular method so long as the district court
has the opportunity to consider objections and assess the
reliability of evidence supporting the fact at issue. 667 F.3d
440, 441 (4th Cir. 2011). <u>See also</u> <u>Terry</u>, 916 F.2d at 162
("Without an affirmative showing the information is inaccurate,
the court is free to adopt the findings of the [PSR] without
more specific inquiry or explanation. The burden is on the
defendant to show the inaccuracy or unreliability of the
[PSR].")(internal quotation marks and citation omitted).
   Mendez also argues that the PSR improperly relied on the
drug quantity base offense level under the 2009 cocaine base to
cocaine ratio rather than applying the 2010 amendments to the
ratio. Because Mendez did not raise that claim below, we review
it for plain error. <u>United States v. Lynn</u>, 592 F.3d 572, 577-78
(4th Cir. 2010).
   The Government admits the 2010 Guidelines should have been
used, but contends that the offense level would have been the
same under the 2010 Guidelines as it was under the 2009
Guidelines. We agree. Under the 2010 amendments, Mendez' base
offense level would not be different. To be sure, the 2010
amendments did alter the drug equivalency tables for cocaine
(Continued)

U.S.S.G. § 3B1.1 provides that an offense level may be increased by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." In the district court, Mendez challenged the full three-level enhancement by contending that he was a "mule" on one side of the conspiracy and a leader on the other. On appeal, Mendez' argument has evolved—he now appears to challenge the application of any enhancement pursuant to § 3B1.1. We need not consider whether this argument has been properly preserved, however, because even assuming it was, the district court did not clearly err in applying the enhancement.

The § 3B1.1(b) supervisory-role enhancement is appropriate based on finding the presence of some or all of the following seven factors: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a

---

base. Under the new equivalencies, however, Mendez would be responsible for 14,637.76 kilograms of marijuana, which would still place his base offense level at 36. See § 2D1.1(c)(2) (setting an offense level of 36 for offenses involving "[a]t least 10,000 KG but less than 30,000 KG mari[j]uana"). Accordingly, Mendez cannot show that this error affected his substantial rights such that it constitutes reversible plain error.

larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Cmt. n.4 (emphasis added). The emphasized factors are present in Mendez' case, as the record shows that Mendez exercised great control over a middleman in the conspiracy, directing the middleman's dealing and actively negotiating between participants in the conspiracy and distributing large levels of cocaine and crack over a lengthy period of time. Mendez does not challenge any of the PSR's statements regarding his leadership role over the middleman with regard to the Robeson County side of the operation.[3] Instead, he attempts to claim the PSR is inconsistent because it also describes him as acting as a "mule" early in the conspiracy with regard to another component of the conspiracy. Reviewing the PSR's description of the offense conduct, however, provides

---

[3] To the extent that Mendez argues that the enhancement is not applicable because he supervised only one individual, that argument has been expressly rejected by the commentary, U.S.S.G. § 3B1.1 cmt. n.2 (2010) ("to qualify for an adjustment under this section, the defendant must have been the organizer, leader, or supervisor of one or more other participants.") (emphasis added), a fact which we have previously recognized, see United States v. Cameron, 573 F.3d 179, 184 (4th Cir. 2009) ("The Sentencing Commission has clarified in an Application Note to § 3B1.1 that in order to qualify for an enhancement, the defendant must have been the organizer or leader of 'one or more other participants' . . . .").

sufficient information on which the district court could apply this enhancement; Mendez is manufacturing inconsistencies that simply do not exist. On this record, we hold that the district court did not clearly err in finding that the three-level enhancement was appropriate based on a preponderance of the evidence.

C.

Mendez' final challenge is to the substantive reasonableness of his sentence. Before we can evaluate his substantive reasonableness claim, however, we must find the sentence procedurally reasonable. See United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (noting that we may consider the substantive reasonableness of the sentence "[i]f, and only if, we find the sentence procedurally reasonable."); see also United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010) ("If the appellate court finds a sentence procedurally reasonable, it then moves to the second step, in which it consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.") (internal quotation marks omitted).

Although we have rejected above the arguments articulated on appeal by Mendez, an obvious procedural error is reflected in the record: the complete absence of explanation by

the district court for the sentence imposed. We review the issue for plain error, see United States v. Delgado, 672 F.3d 320, 328-29 (5th Cir. 2012) ("the plain-error test has long been applied to unpreserved and unpresented errors"), and therefore consider whether the district court committed error; that was plain; and affected Mendez' substantial rights. See United States v. Strieper, 666 F.3d 288, 295 (4th Cir. 2012).

This court has specified in unmistakable terms that a sentencing court "must state in open court the particular reasons supporting its chosen sentence." Carter, 564 F.3d at 328 (internal quotation marks omitted); see also Lynn, 592 F.3d at 576. In so doing, the sentencing judge "must place on the record an 'individualized assessment' based on the particular facts of the case before it[,]" which "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. . . ." Carter, 564 F.3d at 328, 330.

This is not an onerous burden. A sentencing court need not "robotically tick through § 3553(a)'s every subsection." United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006). "Nor need the district court articulate in a vacuum how each § 3553(a) factor influences its determination of an appropriate sentence." United States v. Carty, 520 F.3d 984, 992 (9th Cir. 2008). Nevertheless, "the district judge, not an

- 11 -

appellate court, must make an individualized assessment based on the facts presented to him." Carter, 564 F.3d at 329 (internal quotation marks omitted). Where, as here, a defendant asks for a sentence lower than that which the district court finds appropriate, the district court has to say something on the record to establish a basis for its conclusion in imposing the criminal sentence.

Despite the previous guidance this Court has provided on this precise issue, see id. at 330 (vacating the judgment and remanding for sentencing where this very district court failed to provide an individualized rationale for a sentence), the district court here committed plain error by failing to provide even a single word of commentary regarding the § 3553(a) factors.[4] We again repeat: Appellate courts are not in the

---

[4] The fact that Mendez failed to raise such an important and apparent error is of no moment: it is plainly obvious, and "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." United States v. Frady, 456 U.S. 152, 163 (1982) (stating when plain error exists). The district court sentenced Mendez, without any comment, to 210 months' imprisonment——roughly the average of the polar recommendations of the parties, but definitely a higher sentence than he requested. While the sentence thus happened to land within the Guidelines range, it was also clearly higher than the specific sentence Mendez sought and left Mendez' nonfrivolous arguments for a lower Guidelines-range sentence unaddressed. Although there would appear to be sufficient bases in the record upon which the district court could reach the sentencing decision it decreed, under these circumstances, we conclude the district court's error seriously
(Continued)

business of "guess[ing] at the district court's rationale," or sleuthing for "clues that might explain a sentence." Id. at 329-30. Moreover, contrary to the Government's contention, we simply cannot rely on the Government's arguments as support for the district court's unknown ultimate sentencing decision. See id. (rejecting Carter's argument to "presume" that the district court adopted his arguments or "silently adopted arguments presented by a party"). Rather, the sentencing judge "must place on the record an 'individualized assessment' based on the particular facts of the case before it[,]" which "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. . . ." Id. at 328, 330 (emphasis added).

For these reasons, the district court plainly erred in a manner affecting Mendez' substantial rights in wholly failing to evaluate the § 3553(a) factors during sentencing proceedings.

IV.

We note that this procedural derailment might have been corrected at any number of junctures. The Government might

affected the fairness of the sentencing proceeding by the total absence of any explanation.

have directed the district court to the error immediately after the district court pronounced Mendez' sentence. Appellant's counsel, had she only presented the issue on appeal, could have cabined our review to the (more-easily-satisfied) abuse of discretion standard. To be sure, someone other than this Court should have flagged such a fundamental error. That said, the error here is so plain and deleterious to the defendant's substantial rights that we must vacate and remand this case for resentencing so that the district court can conduct a proper § 3553(a) analysis and provide a basis for the sentence imposed.

VACATED AND REMANDED